UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 03-6568(DSD/JSM)

Kerry B. Krueger,

       Plaintiff,

v.                                                   **ORDER**

Speedway SuperAmerica, LLC,
a Delaware limited liability
company (incorrectly named as
Speedway SuperAmerica, L.L.C., a
Delaware limited liability
corporation,

       Defendant.


    Daniel B. Honsey, Esq. and Kraft, Walser, Hettig &
    Honsey, 131 South Main, P.O. Box 129, Hutchinson, MN
    55350, counsel for plaintiff.

    Marko J. Mrkonich, Esq. Stephanie D. Sarantopoulos, Esq.
    and Litter Mendelson, P.C., 33 Sixth Street South, Suite
    3110, Minneapolis, MN 55402, counsel for defendant.


This matter is before the court upon defendant's motion for summary judgment. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants defendant's motion.


**BACKGROUND**

This is an action under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq. Defendant Speedway SuperAmerica LLC ("Speedway") operates service stations and

convenience stores. Plaintiff Kerry Krueger was employed by Speedway in August of 1995. She voluntarily resigned approximately seven months later and was then re-employed by Speedway beginning February 10, 1997. In 1999, she was promoted to the position of store manager at the Hutchinson, Minnesota, Speedway store. She worked in that position until her termination on September 9, 2002.

In November of 2001, a Speedway store in Burnsville, Minnesota, received a citation for selling tobacco to minors and lost its license to sell tobacco products for one year. In response, defendant began conducting internal compliance checks, or "stings," of its stores to ensure that tobacco sales complied with state law. Defendant sent a memo dated March 14, 2002, to all employees that included the following warning:

> Employees who fail these compliance checks are subject to discipline and likely will be terminated. Managers' [sic] whose store sustain [sic] multiple failures of internal compliance checks risk termination. This is a serious issue. All employees will follow the policy, and will not break the law.

(Krueger Dep. Ex. 19.) Plaintiff signed and returned a copy of the memo on April 3, 2002. She also filled out a short quiz on tobacco sales and signed an agreement to inform all store clerks about tobacco laws. (See Krueger Dep. Ex. 20.)

By the end of April, plaintiff's store had failed five out of five compliance checks. She received a written warning that failing a check in May "will result in removal from her position as

2

manager." (Id. Ex. 21.)  Plaintiff signed and returned the warning on April 29, 2002.  She later received a memo dated May 6, 2002, that addressed tobacco sales policies and stated that "[i]t is the managers [sic] responsibility first to make certain all associates understand the policy and are trained accordingly."  (Id. Ex. 23.) On June 26, 2002, Plaintiff received a "less than satisfactory" overall performance rating from her district manager, Leland Firkus.

In early July of 2002, plaintiff submitted a request for FMLA leave from July 24 to September 4, 2002, to undergo surgery. Defendant approved the leave on July 15, 2002.  By the time plaintiff began her FMLA leave, her store was the only location in the Minnesota division that had failed ten out of ten compliance checks.  In August, Minnesota division vice president David Kaspar informed region manager Ron Meyer and others of compliance check results.  Kaspar noted that the Hutchinson store "has NEVER passed -(mgr needs replaced)."  (Krueger Dep. Ex. 29 (emphasis in original).)  On August 14, 2002, Meyer forwarded the message to Firkus and others with the instruction that "[i]f you have an item or issue on the list that applies, or needs attention or correction - get going on it."  (Id.)

Defendant alleges that Firkus correctly understood that he was to terminate plaintiff's employment.  However, defendant contends that he did not immediately do so because he mistakenly believed he

3

had to wait until she returned from leave.  On Thursday, September 5, 2002, plaintiff returned from leave and informed Firkus that she could not work more than four hours at a time and required at least two days off per week, as instructed by her doctor.  Firkus responded that he wanted her to work mornings from six to ten starting Friday, September 6, and that she should take her days off during the week.  Plaintiff apparently asked for Friday off, which Firkus granted.[1]  Firkus also learned on September 5 that he could terminate plaintiff's employment at any time, if based on a legitimate reason.  On September 9, 2002, Firkus terminated plaintiff based upon her store's failure to pass a compliance check as of August 2002.

Plaintiff filed this action on December 31, 2003.  She claims that defendant violated FMLA by retaliating against her for taking FMLA leave, failing to reinstate her to a same or similar position and denying her additional leave.  Defendant denies plaintiff's allegations and now moves for summary judgment on all claims.

---

[1] Plaintiff cites "Firkus Dep. Exhibit 10" following the alleged transcript of Firkus's voice mail messages left for Plaintiff on September 5, 2002.  The court is unable to locate such an exhibit in the record.  However, defendant does not dispute the content of those messages.  Therefore, the court will refer to plaintiff's rendition of the messages.  (See Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. at 6.)

## DISCUSSION

### I.   Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)(quoting Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be

5

granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. See id. at 322-23.

**II. FMLA**

   **A.   Retaliation Claim**

Plaintiff alleges defendant retaliated against her for exercising her rights under FMLA. FMLA prohibits employers from discriminating or retaliating against an employee because the employee exercised or attempted to exercise rights established by the Act. See 29 U.S.C. § 2615(a)(2); Throneberry v. McGehee Desha County Hosp., 403 F.3d 972, 977 (8th Cir. 2005). For a FMLA retaliation claim to survive a motion for summary judgment, a plaintiff must make a prima facie showing of wrongful retaliation. See McBurney v. Stew Hansen's Dodge City, Inc., 398 F.3d 998, 1002 (8th Cir. 2005). To establish a prima facie claim, plaintiff must show (1) that she engaged in conduct protected under the Act, (2) that she suffered an adverse employment consequence, and (3) that there is a causal connection between the two. See id.

Once a plaintiff has made a prima facie showing of FMLA retaliation, the court applies a variant of the familiar "shifting burdens" analysis set forth in McDonnell Douglas. See Smith v. Allen Health Sys., Inc., 302 F.3d 827, 832 (8th Cir. 2002) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). The defendant must offer a legitimate, non-retaliatory reason for the

6

adverse action. See id. at 833. Next, the plaintiff must rebut the defendant's justification by presenting evidence that the proffered reason is pretext. See id. at 833. If the plaintiff presents such evidence and creates a reasonable inference of retaliation, summary judgment is inappropriate. See id. at 833.

Plaintiff sets forth two different theories of retaliation. First, plaintiff alleges that defendant unlawfully terminated her employment in retaliation for taking FMLA leave from July 24 to September 4, 2002. As to this allegation, plaintiff has shown the first and second elements of a prima facie claim. She engaged in protected conduct when she received qualifying leave under the Act, and she experienced an adverse employment action when defendant later terminated her employment.[2] See Kerns v. Capital Graphics, 178 F.3d 1011, 1016 (8th Cir. 1999).

To show causation, plaintiff asserts that the passage of a few days time between her return from leave and her termination supports an inference of reprisal. However, temporal proximity is generally measured between the request for, or beginning of, FMLA

---

[2] Plaintiff claims that the June 26, 2002, negative performance review was also an adverse action in response to her request for leave. (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. at 10.) However, a negative employment review "is actionable only if the employer subsequently uses the evaluation as a basis to alter in a detrimental way the terms or conditions of the recipient's employment." Henthorn v. Capitol Communications, Inc., 359 F.3d 1021, 1028 (8th Cir. 2004). Here, plaintiff has neither alleged nor shown that her negative performance review was used as a basis to terminate her employment.

7

leave and the adverse employment action.  See Strate v. Midwest Bankcentre, Inc., 398 F.3d 1011, 1020 (8th Cir. 2005); Smith, 302 F.3d at 832-33.  But see McBurney, 398 F.3d at 1003 (lapse of six months between *return* from FMLA leave and adverse action does not suffice to show causation).  More than mere temporal proximity is generally required to create a fact question on a claim of retaliation.  See Buettner v. Arch Coal Sales Co., 216 F.3d 707, 716 (8th Cir. 2000) (citing Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999)).  The Smith court noted certain exceptions to the general rule, but stated that where temporal proximity is the only evidence of a causal connection, such proximity "must be very close."  Smith, 302 F.3d at 832-33 (8th Cir. 2002).  The court found that a two-week interval between the beginning of FMLA leave and the adverse employment action "barely" met the minimal requirements of establishing a prima facie claim. Id.  Here, the interval was three times as long and the court finds that plaintiff cannot establish a causal connection on that basis alone.  Therefore, plaintiff's first theory of retaliation is rejected.

As to her second theory, plaintiff alleges that defendant retaliated against her for attempting to exercise her FMLA rights after returning to work by requiring her to work every Saturday and Sunday and terminating her employment.  Defendant responds that plaintiff never engaged in conduct protected by FMLA after she

8

returned from her leave. In order to benefit from the protections of FMLA, an employee must provide notice to her employer that she plans to take FMLA leave. See 29 U.S.C. § 2612(e)(2). The employee need not name the statute, but must provide information to suggest that her health condition is serious. Woods v. DaimlerChrysler Corp., -- F.3d --, 2005 WL 1330704, at *6 (8th Cir. June 7, 2005). An employee may take intermittent FMLA leave if medically necessary. 29 U.S.C. § 2612(b)(1).

Here, when plaintiff returned to work after having her surgery, she informed Firkus that she could only work four hours a day with a minimum two days off per week. She also alleges that she provided a note and letter from her doctor regarding the necessary work restrictions. Based on these undisputed facts, plaintiff has made a prima facie showing that she provided adequate notice of a need for intermittent FMLA leave. Further, because only a few days lapsed between the notice of intermittent leave and her discharge, plaintiff has also satisfied the causation element. Therefore, plaintiff has met her prima facie burden on her second theory of retaliation.

Because she met her prima facie burden, defendant must offer a legitimate, nondiscriminatory reason for its actions. See Smith, 302 F.3d at 833. Defendant alleges that it discharged plaintiff because her store continually failed tobacco sales compliance checks. In other words, plaintiff did not meet the requirements of

her position as store manager because she failed to adequately train the store clerks.  Poor work performance is a legitimate, non-retaliatory justification for termination.  See Pope v. ESA Servs., Inc., 406 F.3d 1001, 1008 (8th Cir. 2005).

When the defendant has come forward with a valid reason for its actions, the burden returns to plaintiff to present evidence that (1) creates a question of fact as to whether the proffered reason is pretextual and (2) creates a reasonable inference of retaliation.  Smith, 302 F.3d at 833.  To make such a showing, plaintiff points to the fact that Firkus did not immediately terminate her when he received Kaspar's email on August 14, 2002, but rather waited a few weeks until she returned from leave.  However, such a delay does not suffice to show pretext because Firkus did not make the original determination to remove plaintiff from her position as store manager.[3]  Furthermore, defendant had been concerned for many months about the failed compliance checks at plaintiff's store.  The consistency of that concern is not undermined by waiting until plaintiff returned from leave to

---

[3] Plaintiff asserts that "[t]here is no evidence Mr. Kaspar directed the termination of Plaintiff."  (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. at 12.)  The court finds the assertion has no merit, however, because it is undisputed that Kaspar instructed that plaintiff "needs [to be] replaced."  (Krueger Dep. Ex. 29.)  Also undisputed is the fact that Kaspar's instruction was in response to the failed compliance checks.

terminate her employment. See Smith, 302 F.3d at 834 (evidence that employer was concerned about performance before employee engaged in protected conduct undercuts showing of pretext).

Finally, plaintiff contends that defendant's proffered reason is pretextual because Firkus promoted store clerks who personally failed the compliance checks. For such evidence of pretext, it is plaintiff's burden "to prove that the compared employees were similarly situated in all relevant respects." Smith, 302 F.3d at 835. As store manager, it is undisputed that plaintiff had the duty to train the store clerks concerning the tobacco sales policy. Defendant also warned plaintiff as early as March, 2002 that she had such a duty and would be held responsible for any failed compliance checks at her store. The store clerks did not have a similar duty to train or similar responsibility for the store's compliance with company policy and state law. Plaintiff has made no showing to contradict these facts or otherwise prove that the compared employees were similarly situated. For all of the above reasons, plaintiff has failed to show that defendant's justification for her termination is pretext or to show a reasonable inference of a retaliatory motive. Therefore, summary judgment in favor of defendant is appropriate.

    **B.   Interference Claim**

Although not set forth in her complaint, plaintiff alleges that defendant unlawfully interfered with her FMLA rights. She

points to the fact that she delayed her surgery when Firkus told her in late March or early April of 2002 that it was a bad time for her to take leave and that the store needed a manager. FMLA prohibits employers from interfering with, restraining or denying the exercise of an employee's rights provided under the Act. See 29 U.S.C. 2615(a)(1). Similarly, an employer may not discourage an employee from using FMLA leave. See 29 C.F.R. § 825.220(b). On the other hand, "the employee must consult with the employer and make a reasonable effort to schedule the leave so as not to disrupt unduly the employer's operations." Id. § 825.302(e). Plaintiff has made no showing that Firkus discouraged her from taking any FMLA leave. Rather, plaintiff appropriately discussed the timing of her elective surgery and anticipated leave with Firkus. Less than three months later, she requested and was approved for such leave. The court finds that plaintiff has failed to show unlawful interference. Summary judgment is appropriate.

**C.   Reinstatement Claim**

Plaintiff alleges that defendant failed to reinstate her to her employment when she returned from FMLA leave. Any employee who takes FMLA leave is entitled to return to the position she held when the leave commenced, or to an equivalent position. See 29 U.S.C. § 2614(a)(1). However, "if an employer were authorized to discharge an employee if the employee were not on FMLA leave, the FMLA does not shield an employee on FMLA leave from the same,

lawful discharge." Throneberry, 403 F.3d at 978.  It is undisputed that plaintiff returned to her position as store manager of the Hutchinson, Minnesota Speedway store when she returned from her FMLA leave.  Her subsequent discharge has already been analyzed and found lawful pursuant to FMLA.  For these reasons, the court finds that defendant reinstated plaintiff to the position she held when her leave commenced and that FMLA did not shield her from the lawful discharge that occurred after she returned from leave. Therefore, summary judgment is warranted.

**D.   Denial of Additional Leave Claim**

Plaintiff alleges that defendant unlawfully denied her FMLA leave on September 9, 2005.  In particular, plaintiff asserts that she attempted to discuss her inability to return to work full-time. Although plaintiff was entitled to take intermittent FMLA leave if medically necessary, 29 U.S.C. § 2612(b)(1), she has failed to show that she was denied any such leave.  Rather, the record demonstrates that Firkus accommodated her work restrictions when she returned on September 5, 2002.  Therefore, summary judgment is appropriate.

**CONCLUSION**

For the foregoing reasons, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Doc. No. 8] is granted. **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 22, 2005

s/David S. Doty
David S. Doty, Judge
United States District Court
